IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**IN ADMIRALTY**

| | | |
|---|---|---|
| The United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 05-cv- |
| ERIK J. TAKAKJIAN, STEVE GATTO, TOM PACKER, | ) | |
| TOM MURRAY, DAVE MORTON, STEVE SCHEUER, | ) | **VERIFIED** |
| and the BOSTON SEA ROVERS, *in personam*, and the | ) | **COMPLAINT** |
| RESEARCH VESSEL (R/V) QUEST, her engines, | ) | |
| anchors, tackle, and appurtenances, etc., *in rem*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

05 10397 RWZ

MAGISTRATE JUDGE *Alexander*

## VERIFIED COMPLAINT OF THE PLAINTIFF UNITED STATES OF AMERICA

The United States of America ("United States"), for its Verified Complaint against

the above-named individual Defendants, *in personam*, and R/V QUEST, *in rem*, alleges

upon information and belief as follows:

1.    This is a case under admiralty and maritime jurisdiction within the meaning

of Rule 9(h), Federal Rules of Civil Procedure.

2.    Plaintiff is the United States of America, a sovereign nation authorized to sue

under 28 U.S.C. § 1345.

3.    Venue is appropriate because this admiralty matter involves the wreck of the

U.S. Lighthouse Service[1] Lightship NANTUCKET (LV-117) – and the remains of the

sailors who comprised her crew – in the waters south of Nantucket, Massachusetts.

4.    R/V QUEST is now or during the pendency of process herein will be within

this District.

5.    At all pertinent times, R/V QUEST was managed, owned, operated or

controlled by Defendant Takakjian; was crewed by Defendants Gatto, Packer, Murray,

Morton, and Scheuer; and was sponsored by the Defendant Boston Sea Rovers.

6.    At all pertinent times, the United States was – and remains – the owner of the

NANTUCKET (LV-117).

BACKGROUND FACTS

7.    The NANTUCKET (LV-117) was built for and operated by the United States

as a light vessel ("LV").  Her station was roughly 50 miles south of the Island of Nantucket

and 200 miles east of New York City.  On or about May 15, 1934 the NANTUCKET

(LV-117) was rammed then sank with four of its crew still aboard.  The Coast Guard was

unable to retrieve their remains and considers the wreck a grave site.

8.    The Coast Guard decommissioned the NANTUCKET (LV-117) but has not

abandoned the vessel.  NANTUCKET (LV-117) remains property of the United States

under the custody of the United States Coast Guard.

---

[1] The U.S. Lighthouse Service was since enfolded into the U.S. Coast Guard.

9.     On March 1, 1999, Defendant Takakjian contacted the Board of Underwater Archeological Resources (BUAR) for the Commonwealth of Massachusetts with respect to his interest in retrieving items from the NANTUCKET (LV-117).  BUAR documented that discussion with a letter to Takakjian expressly noting that NANTUCKET (LV-117) was federal property under the control of the U.S. Coast Guard.  BUAR specifically advised Takakjian that such a project could be undertaken:

- only with the consent and cooperation of the United States Coast Guard;

- that all recovered materials will remain the property of the Coast Guard; and

- that all recovered material would be turned over to the Coast Guard.

BUAR informed the Coast Guard of Takakjian's request by sending copies of its letter to the Coast Guard Historian, Robert Browning, and the curator of the Coast Guard Museum, Cindee Herrick.  (*See*, Exhibit A).

10.    Within days of his conversation with the Massachusetts BUAR, Takakjian wrote to the U.S. Coast Guard's Chief Counsel on March 5, 1999, with copies to historian Robert Browning and curator Cindee Herrick.  Takakjian explained that he had located the wreck of NANTUCKET (LV-117).  He *requested permission* to "recover the ship's fog bell, conserve, and stabilize it" and deliver it to the Coast Guard Museum on the grounds of the Coast Guard Academy in New London, Connecticut.  Takakjian concluded his request by stating, "I await the approval of your office, Mr. Browning and Ms. Herrick before proceeding further with this project." (*See*, Exhibit B).

3

11.    The following month, by direction of the Commandant of the U.S. Coast Guard, the Acting Chief of the Coast Guard's Office of Environmental Law wrote back to Takakjian to inform him that:

- the Coast Guard's Office of Financial Management, as custodian of the decommissioned vessel, would decide the matter;

- the remains of crew members of the NANTUCKET (LV-117) are believed to still be aboard the vessel; and

- historical preservation issues were involved; so,

- Federal law required the Coast Guard to engage in multi-agency coordination before reaching a decision on Takakjian's request; but,

- Takakjian could expedite the review process by submitting evidence of his professional expertise and details of his salvage plan.

(*See*, Exhibit C).  That response also identified specific points of contact at the Office of Financial Management and invited Takakjian to contact the Coast Guard's legal staff if he had further questions.  (Id.)

12.    The Coast Guard did not receive further information or inquiry from Defendant Takakjian.  By direction of the Commandant, the Chief of the Coast Guard's Asset Management Division answered Takakjian's request on June 28, 1999.  That response:

4

- referred directly to Takakjian's request of March 5, 1999;

- confirmed that the U.S. Coast Guard is the owner and custodian of the NANTUCKET (LV-117);

- confirmed that under Federal criteria for historic property, significant consultation and evaluation would be required prior to going forward;

- because the shipwreck is a gravesite, there were significant issues of privacy;

- and as a result, the U.S. Coast Guard informed Takakjian, "you may not undertake any activities involving the NANTUCKET."

(*See*, Exhibit D). Although that denial letter provided Takakjian a point of contact, he did not disagree with, complain about, or appeal the decision rendered on June 28, 1999.

13.    In September 2004, the founder of the USCG Lightship Sailors Association, Inc., alerted the Coast Guard that Defendant Boston Sea Rovers had removed artifacts from the NANTUCKET (LV-117), stating: "Projects like this should never happen. From a very personal standpoint, these people are desecrating a grave site of my brother Lightship Sailors who died with honor." He forwarded a press release from the Boston Sea Rovers claiming to have taken the following items from the NANTUCKET (LV-117):

- the ship's bell

- its helm

- its engine order telegraph

- its binnacle

- its signal light, and

- several portholes

(*See*, Exhibit E).   The Boston Sea Rovers' press release discusses how Defendants

Takakjian, Gatto, Packer, Murray, Morton and Scheuer used force "to finally break the bell

and it's (sic) support legs free from the wreckage" and how they cut off the bell's support

structure to make it easier to bring aboard R/V QUEST.  (Id.).  The press release made no

mention of returning that Federal property to the United States, but instead boasted about

placing it on public display.  (Id.).

14.    Once informed that Defendant Takakjian had completely ignored the Coast

Guard's instructions to refrain from undertaking any activities involving the NANTUCKET

(LV-117),  Coast Guard investigators contacted Takakjian.

15.    Defendant Takakjian admitted that he had received the Coast Guard's denial of

his request to dive on the NANTUCKET (LV-117) to retrieve its bell.  He further admitted

that in addition to those items listed in ¶ 13, he had also removed the Lightship's main

lantern and a clock case.

16.    While Defendant Takakjian stated that he intended to put the items taken

from NANTUCKET (LV-117) on public display, he maintained the ship's bell and binnacle

on his own property.  Takakjian also transferred the ship's light assembly, helm, and engine

order telegraph to Defendants Packer and Gatto, who live in New Jersey.

17.    On November 23, 2004, Defendant Takakjian told Coast Guard investigators

that he and his colleagues would return the property taken from NANTUCKET (LV-117).

Having received Takakjian's pledge to promptly return that property, the United States

Attorney for the District of Massachusetts declined to prosecute Takakjian for "stealing

federal government property." (*See*, Exhibit F).

18.    However, rather than returning the NANTUCKET (LV-117) artifacts, the

Defendants engaged counsel and purported to set terms by which they might return the

items taken from NANTUCKET (LV-117).

19.    The items Defendants removed from the NANTUCKET (LV-117) have a

commercial value worth tens of thousands of dollars.

<u>COUNT I</u> (Trespass, Wrongful Possession, and Conversion)

20.    The United States incorporates and adopts preceding ¶¶ 1-19.

21.    Without authority – and with express instructions <u>not</u> to dive on the wreck of

Lightship NANTUCKET (LV-117) – Defendants removed property of the United States.

22.    Defendants continue to improperly hold property of the United States.

<u>COUNT II</u> (Trespass and Negligent Conversion)

23.    The United States incorporates and adopts preceding ¶¶ 1-22.

24.    Without authority – and with express instructions <u>not</u> to dive on the wreck of

Lightship NANTUCKET (LV-117) – Defendants defaced and destroyed  property of the

United States by cutting off the support legs of the bell of the NANTUCKET (LV-117).

<u>COUNT III</u> (Violation of NHPA)

25.    The United States incorporates and adopts preceding ¶¶ 1-24.

26.    Without authority – and with express instructions <u>not</u> to dive on the wreck of

Lightship NANTUCKET (LV-117) – Defendants removed historical artifacts and defaced

or destroyed another from the NANTUCKET (LV-117) in violation of the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470h-2.

27.    Without authority – and with express instructions not to dive on the wreck of Lightship NANTUCKET (LV-117) – Defendants failed to follow established NHPA procedures to preserve the archeological integrity of the historical site of the wreck of the NANTUCKET.

WHEREFORE, plaintiff prays:

1.    That the Defendants Takakjian, Gatto, Packer, Murray, Morton, Scheuer, and the Boston Sea Rovers be summoned to answer this Complaint and that a Warrant be issued for the Arrest of the R/V QUEST, its engines, tackle, apparel and appurtenances, etc.;

2.    That judgment be entered in favor of the Plaintiff United States and against Defendants and that this Honorable Court orders the Defendants to return to  the United States, forthwith, all those items that Defendants removed from the wreck of the Lightship NANTUCKET (LV-117), with the United States' costs in litigating this matter;

3.    That judgment of condemnation and sale be entered against the R/V QUEST and that the amount of the Plaintiff United States' costs be paid out of the proceeds thereof;

4.    That this Honorable Court would permanently enjoin the Defendants from further dives on the wreck of the Lightship NANTUCKT (LV-117); and

5.    That Plaintiff United States have such other further relief as the Court may deem just and proper.

February 28 , 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant United States Attorney
District of Massachusetts
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210


MATTHEW J. GLOMB
Admiralty Trial Attorney, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone:  (202) 616-4035 (Glomb)
Facsimile:  (202) 616-4159

Attorneys for the Plaintiff United States

## VERIFICATION

I am an attorney employed by the Aviation & Admiralty Office, Torts Branch, Civil

Division, U.S. Department of Justice, and one of the attorneys for Plaintiff United States of

America herein, and make this verification by authority of Plaintiff and on its behalf. I have

reviewed the foregoing Complaint, know the contents thereof, and, from information

officially furnished to me, believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the

foregoing is true and correct. Executed: February 28, 2005.


MATTHEW J. GLOMB

# Exhibit A



*The Commonwealth of Massachusetts*
*Executive Office of Environmental Affairs*
*100 Cambridge Street*
*Boston, Massachusetts 02202*

BOARD OF
UNDERWATER
ARCHAEOLOGICAL
RESOURCES

March 18, 1999

Mr. Eric J. Takakjian
Quest Marine Services
P.O. Box 42
Yarmouthport, MA  02675

RE:    Nantucket Lightship #117

Dear Mr. Takakjian,

Thank you for your interest in the Massachusetts Board of Underwater Archaeological Resources. It was a pleasure to speak with you again on Monday, 1 March 1999. It greatly encourages me to see your enthusiasm to undertake this potential project in an archaeological appropriate manner. As we discussed, I am providing some information that might be of assistance to you.

As you are aware, any documentation and recovery of archaeological resources should be supervised and directed by a qualified archaeologist. Given that you propose recovering materials from U.S. government property (Nantucket Lightship #117), I am certain this would be a condition of the U.S. Coast Guard. Similarly, they may also require the assistance of a conservator.

To assist you in planning the project and developing your proposal to the U.S. COAST Guard, I suggest you consult the following publications. The International Council on Monuments and Sites (ICOMOS) has developed the **International Charter on the Protection and Management of Underwater Cultural Heritage** (1996) that provides a concise outline of proper and professional acceptable project design and treatment of our underwater heritage. To enhance your understanding of proper field methodology, I suggest you read Martin Dean's **Guidelines on Acceptable Standards in Underwater Archaeology** (1988) or Lynn Harris' **Underwater Archaeology Manual for South Carolina Sport Divers** (1990). I have enclosed copies of all three publications. While none of these will substitute for the services of an archaeologist, they will certainly be very helpful to your understanding what is involved in your proposed project.

It is my understanding that the Nantucket Lightship #117 is federal property outside state water. As I explained to you, the Board may cooperate and enter into agreements with federal agencies, as opposed to other individuals or organizations, for the management of underwater archaeological resources outside state waters (MGL Chapter 6, Section 180). In our telephone conversation, you informed me:

- this project will be undertaken to the appropriate archaeological and conservation

ENCLOSURE_____1_____

PAGE__6__ OF __31__ PAGES

standards;

    - this project will be undertaken only under the consent and cooperation of the U.S. COAST Guard;

    - that all recovered materials will remain the property of the U.S. COAST Guard; and

    - that all recovered materials will turned over to the U.S. Coast Guard.

Given these factors, I am confident the Board can express its interest in your project and its willingness to cooperate with the U.S. Coast Guard assisting the you with this project.

    If I can be of further assistance, do not hesitate to contact me at the address above or by telephone at (617) 727-9800, x.212. The best of luck in your endeavor.

Sincerely yours,

Victor T. Mastone
Director, BUAR

/vtm
enclosures (3)
cc:    Robert Browning, USCG (w/o enclosures)
       Cindee Herrick, USCGMuseum (w/o enclosures)

ENCLOSURE_____1_____

PAGE __7__ OF __31__ PAGES

# Exhibit B



**CAPTAIN ERIC J. TAKAKJIAN**
*Marine Surveyor*

P.O. Box 42
Yarmouthport, MA 02675
(508) 362-6501

U.S.COAST GUARD HEADQUARTERS
Office of Cheif Counsel (G-L)
2100 Second st. S.W.
Washington, D.C. 20593

5 March, 1999

Copies: R.M. Browning Jr.
        Cindee Herrick

To whom this may concern:

I am an underwater explorer, focusing on New England shipwrecks of
historical nature. In 1995 I began researching the U.S. Lighthouse
Service lightship #117 NANTUCKET, which was run down and sunk on
station by the White Star Line passenger ship R.M.S. OLYMPIC, on
May 15th, 1934. On January 11th 1998, myself and three friends went
to the area in which I believed the 117 had sunk, to conduct a side
scan sonar search of the area. I had approximately forty targets
within a two mile radius of where I believed the lightship to be.
This entire area we covered utilizing both 100 and 500 KHZ side
scan sonar. We found two wrecks and a great deal of debris, mostly
mushroom anchors and chain. Of the two wrecks we found one was a low
lying wood wreck possibly a fishing schooner. The other was a metal
hulled wreck whose size was consistent with that of the 117. This
wreck on the sonar measured 40 meters long, 10 meters wide and 6
meters high. The dimensions of the 117 are 133'/40.9 meters long,
30'/9.2 meters in beam.
On July 18th & 19th 1998, myself and members of my team went back
out to the site and made several dives on the wreck over the two
day period. What we found was a steel hulled lightship lying on its
port side, with her starboard side high. The hull is intact and
rises approximately 20' off the bottom. The starboard side appears
undamaged. The superstructure appears to have collapsed into the
wreck and out into the sand. A great deal of commercial fishing gear
such as nets and cables is hung up on the wreck, and appears to have
moved around and separated alot of the ships equipment from its o
original place on the ship. The main mast is lying parallel to the
hull with the top of the mast next to the bow. The foremast is
lying out in the sand extending out 45 degrees from the hull in a
forward direction. Both masts have electric lanterns on them. The
ships bullnose is intact and the anchor chain extends from the windlass
out thru the bullnose and out into the sand. The ships fog bell is
intact and still mounted in its bellfrey, which is still bolted to
the foredeck beams. The foredeck plating has rusted away.

**ENCLOSURE(1)**

ENCLOSURE_____1_____

PAGE 4 OF 31 PAGES



**CAPTAIN ERIC J. TAKAKJIAN**
*Marine Surveyor*

P.O. Box 42
Yarmouthport, MA 02675
(508) 362-6501

I feel that we have positively identified this wreck as that of the
117, due to these points: the size of the wreck matches that of the
117, equipment on the wreck consistent with that which was aboard the
117 (fog bell & electric lanterns), lightship style bullnose, the
wreck has a diesel electric propulsion system the same as was on the
117.
The wreck is lying on a sand bottom in 200' of water, in an area
that commonly has very strong currents.
What I would like to do during the 1999 dive season is recover the
ships fog bell, conserve and stabilize it and then convey it to the
U.S. Coast Guard Academy's museum in New London CT. I understand that
if recovered the bell must be brought up utilizing accepted archaeologic
practices. I have been in contact with Cindee Herrick curator of the
museum, and she has expressed interest in having the bell for display.
I have also been in contact with Victor Mastone, director of the
Massachusetts Board Of Underwater Archaeological Resources. Mr. Mastone
has agreed to have the board provide guidance as to accepted
archaeological practices in the recovery of the bell. I also hope to
write or co write an article for a national magazine about the history
of the Nantucket lightship station, the 117 , its subsequent loss,
discovery of the wreck and then recovery of the bell and transfer to
the Coast Guard Academy's museum.
I await the approval of your office, Mr. Browning and Ms. Herrick
before proceeding further with this project.


Sincerely yours.

Eric J. Takakjian


ENCLOSURE __1__

PAGE _5_ OF _31_ PAGES

# Exhibit C

U.S. Department
of Transportation

**United States
Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, D.C. 20593-0001
Staff Symbol: G-LEL
Phone: (202) 267-6000
FAX: (202) 267-4958

5890

APR 2 2 1999

Captain Eric J. Takakjian
PO Box 42
Yarmouthport, MA 02675

Re:  U.S. Coast Guard Lightship LS 117

Dear Captain Takakjian:

You letter to the Chief Counsel requesting permission to recover the fog bell from LS 117 was forwarded
to this office because of the historical preservation issues involved.  Upon review, it appears that the
appropriate official to act on your request is the Chief, Office of Financial Management, the custodian for
all decommissioned Coast Guard vessels.  Your request has now been forwarded to that office.

We understand you desire to begin salvage operations as soon as possible.  However, you should be
advised that the approval process could be quite time consuming.  Federal law requires that the Coast
Guard engage in consultation with other Federal, and possibly state, agencies before allowing cultural or
historic artifacts under our ownership or control to be disturbed.  The deciding official in this case will
have to engage in such consultation.  As the consultation involves entities outside of the Coast Guard, it is
impossible to estimate how long the process will take.  In addition, some members of the LS 117 crew
went down with the ship and their bodies were never recovered.  It is believed that the remains of these
crewmembers are still on the vessel.  This fact will also have to be taken into consideration.

While consultation will take some time to complete, you may expedite matters by providing, at your
earliest convenience, evidence of your professional credentials and details of your salvage plan to:

Ms. Lynn Brown (G-CFM-3)
Personal Property Program Manager
Office of Financial Management
U.S. Coast Guard
2100 Second Street, S.W.
Washington, DC 20593

If you have any questions feel free to contact LT Levi, of my staff, at (202) 267-6004

Sincerely,

R. E. KILROY
Commander, U.S. Coast Guard
Acting Chief, Office of Environmental Law
By Direction of the Commandant

Copy: G-LGL
      G-LCL
      G-CFM-3

ENCLOSURE_____

PAGE 11 OF 31 PAGES

# ENCLOSURE(2)

# Exhibit D

U.S. Department
of Transportation

**United States
Coast Guard**

Commandant
U.S. Coast Guard Headquarters

2100 Second Street, SW
Washington, DC 20593-0001
Staff Symbol: G-CFM-3
Phone: (202) 267-0654
FAX: (202) 267-4274

4500

JUN 2 8 1999

Mr. Eric J. Takakjian
Quest Marine Services
P.O. Box 42
Yarmouthport, MA 02675

RE: U.S. Lighthouse Service Lightship NANTUCKET LS 117

Dear Mr. Takakjain:

This is in response to your letter of 5 March 1999, requesting authorization to recover the fog
bell of a shipwreck suspected to be the former U.S. Lighthouse Service Lightship NANTUCKET
LS 117. As indicated in your letter, the U.S. Coast Guard is the owner and custodian of the
wreck.

The site of the NANTUCKET is likely to be a historic property under Federal criteria.
Therefore, we are required under Federal law to follow a process of identification, evaluation and
protection of historic properties. This process includes consultation with various interested
parties and experts to develop the appropriate long term management procedures to protect the
historic nature of the site. As an additional point, since this shipwreck is a gravesite, there are
significant issues of privacy. We have not yet completed the long term management procedures
for this site and the Coast Guard is not currently funded to complete this task. In view of these
issues and regulations, you may not undertake any activities involving the NANTUCKET. My
point of contact regarding this issue is Ms. Lynn Brown, at (202) 267-0654. We hope this
information is helpful.

Sincerely,

K. F. SOLOMON
Chief, Asset Management Division
U.S. Coast Guard
By direction

ENCLOSURE 2

PAGE 1 OF 1 PAGES

ENCLOSURE(2)

# Exhibit E

**Young, Eric**

| | |
|---|---|
| **From:** | Inbox [mgmimaging@comcast.net] |
| **Sent:** | Thursday, September 16, 2004 2:08 PM |
| **To:** | Young, Eric |
| **Subject:** | Re: NANTUCKET LS 117 |

Eric,

Here is the information I have gathered so far. The first item is an email
notification about "their good work."
*****************************************************************************
***********************************

Fellow Sea Rovers  -
It's with great pride that I forward on to all of you the press release
announcing the successful completion of the first expedition applied for and
sanctioned under the New Sea Rovers Expedition Flag Program.  Last weekend,
a team of six divers, including 5 Sea Rovers, recovered the 1200 lb. bronze
signal bell from the Nantucket Lightship.

Details follow.

Hi all. I had the privilege of being part of a six man team that recovered
the huge signal bell from the Nantucket Lightship over the past weekend. The
Lightship is located northeast of the Andrea Doria at the edge of the
Nantucket shoals, in waters that are much more confused and unpredictable
than over the Doria. We have typically been only able to average 1 dive each
day due to the high currents (well over 1.5 kts) that do not seem to vary
with tides. However, for reasons beyond our explanation or even
understanding, we had awesome conditions on Friday that included a glassy
smooth service and a slack that lasted nearly 7 hours, enabling us to get
two series of dives in. In those dives, We were able to finish rigging and
filling the four 1,000 pound liftbags needed to finally break the bell and
it's support legs free from the wreckage, dragger nets, and debris that were
conspiring to keep the bell lost forever. After taking quite a bit of
underwater stills and videos, that should make for a great story, we cut the
safety lines and launched the bell to the surface. The deteriorating
angle-iron legs and support structure were cut off prior to the final
boarding of the artifact, which was loaded via the winch and A-frame of the
research boat Quest.

Here's the official press release, and a few photos.


Captain Eric Takakjian, owner and operator of the Research Vessel Quest,
announced today that he and his crew successfully recovered the main signal
bell from the Nantucket Lightship from its final resting site in over thirty
fathoms of water, fifty miles southeast of Nantucket, MA. The four year old,
133' long U.S. Lighthouse Service (USLHS) Lightship, LV-117, was moored on
station, May 15, 1934, when it was rammed and sunk by the 47,000 ton British
White Star luxury liner SS Olympic (sister ship to the Titanic) in a heavy
fog.

After the historic recovery, the captain and crew "tolled the bell" three
times in solemn recognition of the sailors that perished on this, and all
other Lightships that served with the USLHS, precursor to the modern-day
U.S. Coast Guard. The bell sounded clear and true as it rang out over the
Atlantic swells for the first time in over seventy years.

The salvage also marked the first expedition authorized under the Boston Sea
Rovers Expedition Flag Program. The salvage team included Sea Rover members
Steve Gatto, Tom Packer, Tom Murray, Dave Morton and Eric Takakjian, and the
sixth team member, Steve Scheuer. The Boston Sea Rovers are a group of

ENCLOSURE____3____

PAGE_1___ OF_13__F

1

ENCLOSURE(3

divers dedicated to raising the level of knowledge of the underwater world.

According to Captain Takakjian, "The recovery, and subsequent preservation, restoration, and public display of the LV-117 artifacts at museums will provide immeasurable benefits to the maritime community as a whole, and the sailors and family members of the lightship service in particular, by allowing their story to be told, and experienced, by untold thousands of people who would otherwise never be able to visit a dangerous, deteriorating wreck site deep in the North Atlantic."

The successful salvage of the 1,200 pound bronze bell was the culmination of a series of offshore expeditions undertaken since Takakjian first discovered the wreck in 1998. The bell will become the centerpiece of a traveling exhibit to maritime museums in celebration and honor of the men of the USLHS. Other artifacts in the display from the LV-117 will include the helm, telegraph, binnacle, signal light, portholes, photos and video of the wreck site underwater. The final exhibit is expected to be ready for display by the Spring of 2006. In March, 2004, many items for the exhibit were first publicly displayed at the Boston Sea Rovers 50th Annual Clinic.

A historical picture of the LV-117, highlighting the bell on the bow of the ship, can be seen at http://www.uscglightshipsailors.org/lv_117.htm. For further information regarding the history of the Nantucket Lightship, please contact Captain Eric Takakjian, Quest Marine Services, http://www.questmarineservices.com.

Dave Morton
President, Boston Sea Rovers
3 Grace Drive
Nashua, NH 03062
(day) 781-862-8339
(eve) 603-882-7029
(cell) 603-321-9927
(fax) 781-862-0572
&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&&

Second item is most interesting and needs to be read most carefully. There is a lot of damning information on their own website including the Name of the Hotel they had their "show' in .

http://www.questmarineservices.com.

FYI: I placed a call and waiting for a return call to get the Flag/logo issue on our website above board. Thanks for the heads up! I will keep you in the loop on this issue.

Should you need more information on the LV 117 PLEASE let me know. Projects like this should NOT happen. From a very personal standpoint these people are desecrating a grave site of MY BROTHER Lightship Sailors who died with Honor!

Semper Paratus and, GIVE THEM HELL, FLANK SPEED!!!

Marty Krzywicki

Founder/registered webmaster nic # 13069

USCG Lightship Sailors Association Inc.

940 Albemarle Street

Saint Paul MN 55117-5318

651-488-6166

ENCLOSURE 3

PAGE 2 OF 13 PAGES

2

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

----- Original Message -----
From: "Young, Eric" <EJYoung@comdt.uscg.mil>
To: <mgmimaging@comcast.net>
Sent: Thursday, September 16, 2004 11:56 AM
Subject: NANTUCKET LS 117

>

ENCLOSURE____3____
PAGE__3__ OF __13__ PAGES

# Exhibit F



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts  02210*

December 10, 2004

**By Fax (617) 557-9091 and First Class Mail**
Special Agent Michael Burnett
Coast Guard Investigative Service
427 Commercial Street
Boston, MA 02109

     Re: <u>Nantucket Lightship 117</u>

Dear Mr. Burnett:

     This letter will confirm the discussion between you and
Assistant United States Attorney Jonathan Mitchell last week, in
which AUSA Mitchell represented that this Office would decline
the prosecution of Eric Takakjian for stealing federal government
property, namely artifacts from the wreck of the Nantucket
Lightship 117.  We make this declination provided that Mr.
Takakjian and the others who assisted him in his salvaging
operation return all of the artifacts to the Coast Guard
promptly.  You have represented to Mr. Mitchell that it is Mr.
Takakjian's intent to do so.

     Thank you again for the fine work you have devoted to this
case.

                 Very truly yours,

                 MICHAEL J. SULLIVAN
                 United States Attorney

        By: *Diane C. Freniere*
             DIANE C. FRENIERE
             Chief, Economic Crimes Unit

cc:  Jonathan F. Mitchell

ENCLOSURE_____7_____

PAGE _l_ OF _l_ PAGES

JS 44 (Rev. 3/99)  **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

The United States of America

**DEFENDANTS**

Erik Takakjian, Steve Gatto, Tom Packer, Tom Murray, Dave Morton, Steve Scheuer, and the Boston Sea Rovers, in pesonam, and the Research Vessel Quest, in rem

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Yarmouthport, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

05-10397 RWZ

(c) Attorney'S (Firm Name, Address, and Telephone Number)

Matthew J. Glomb, U.S. Dept. of Justice / Admiralty
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4041

Attorneys (If Known)

Peter E. Hess, Esquire
3 Mill Road, Suite 303
Wilmington, DE 19806
(302) 777-1715

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

⊠ 1 U.S. Government Plaintiff

☐ 2 U.S Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X " in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ⊠ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Rule 9(h) Action in ADMIRALTY to recover artifacts of the Lightship NANTUCKET (LV-117) improperly taken and withheld by Defendants

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ⊠ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE  28 FEB 05

SIGNATURE OF ATTORNEY OF RECORD  _Matthew J. Glomb_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.   Title of case (name of first party on each side only)   UNITED STATES v. TAKAKJIAN

2.   Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See
     local rule 40.1(a)(1)).

     [ ]   I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

     [✓]   II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
                  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

     [ ]   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                  380, 385, 450, 891.

     [ ]   IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                  690, 810, 861-865, 870, 871, 875, 900.

     [ ]   V.     150, 152, 153.        **05   10307   RWZ**

3.   Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in
     this district please indicate the title and number of the first filed case in this court.

     N/A

4.   Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES [ ]    NO [✓]

5.   Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
     28 USC §2403)

                                                    YES [ ]    NO [✓]

     If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                          N/A       YES [ ]    NO [ ]

6.   Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES [ ]    NO [✓]

7.   Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
     Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
     40.1(d)).

                                                    YES [ ]    NO [✓]

     A.   If yes, in which division do all of the non-governmental parties reside?

          Eastern Division [ ]        Central Division [ ]        Western Division [ ]

     B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
          agencies, residing in Massachusetts reside?

          Eastern Division [✓]        Central Division [ ]        Western Division [ ]

8.   If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
     yes, submit a separate sheet identifying the motions)

                                          N/A       YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   MATTHEW J. GLOMB

ADDRESS   U.S. DEPT. OF JUSTICE / CIVIL / TORTS, P.O. BOX 14271, WASHINGTON DC 20044-4271

TELEPHONE NO.   202.616.4041

(Coversheetlocal.wpd - 10/17/02)