IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**IN ADMIRALTY**

| | | |
|---|---|---|
| The United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 05-cv-10397 (RWZ) |
| ERIK J. TAKAKJIAN, STEVE GATTO, TOM PACKER, | ) | |
| TOM MURRAY, DAVE MORTON, STEVE SCHEUER, | ) | |
| and the BOSTON SEA ROVERS, *in personam*, and the | ) | |
| RESEARCH VESSEL (R/V) QUEST, her engines, | ) | |
| anchors, tackle, and appurtenances, etc., *in rem*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES' NOTICE OF DISMISSAL OF DEFENDANTS TAKAKJIAN
AND THE RESEARCH VESSEL (R/V) QUEST**

Plaintiff United States files this Notice of Dismissal of Defendants Erik J. Takakjian

and the R/V QUEST – and only those parties – in light of Mr. Takakjian's Declaration of

April 1, 2005, Attachment 1, and his submission of documentation regarding the removal of

items from the Lightship NANTUCKET (LV-117).   Pursuant to Fed. R. Civ. P. 41(a)(1)(i),

the undersigned counsel certifies that no party has answered the United States' Complaint

(Doc. No. 1, filed March 1, 2005) and no party has moved for summary judgment.  *See,*

*generally*, Attachment 2.

June 3 , 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant United States Attorney
District of Massachusetts
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210


MATTHEW J. GLOMB
Admiralty Trial Attorney, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone:  (202) 616-4041
Facsimile:  (202) 616-4159

Attorneys for the Plaintiff United States

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Notice of Dismissal of Defendants Takakjian and the R/V QUEST by the United States was mailed, via First Class Mail, postage prepaid, this 3RD day of June, 2005 to the following:

ERIK J. TAKAKJIAN (Owner and Operator of R/V QUEST)
502 Sconticut Neck Road
Fairhaven, MA 02719

PETER E. HESS, Esq. (Counsel for GATTO and PACKER)
3 Mill Road
Suite 303
Wilmington, DE 19806

THOMAS MURRAY
61 Ballahack Road #1
E. Haddam, CT 06423

STEPHEN C. SCHEUER
261 Charlotte White Road
Westport, MA 02790

DAVID MORTON (President, Boston Sea Rovers)
427 Commercial Street
Boston, MA 02109

MATTHEW J. GLOMB

3

# ATTACHMENT   1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**IN ADMIRALTY**

| | |
|---|---|
| The United States of America, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. |
| | )   05-cv-10397 (RWZ) |
| ERIK J. TAKAKJIAN, STEVE GATTO, TOM PACKER, | ) |
| TOM MURRAY, DAVE MORTON, STEVE SCHEUER, | ) |
| and the BOSTON SEA ROVERS, *in personam*, and the | ) |
| RESEARCH VESSEL (R/V) QUEST, her engines, | ) |
| anchors, tackle, and appurtenances, etc., *in rem*, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

## DECLARATION OF ERIK J. TAKAKJIAN

I, Erik J. Takakjian, hereby declare as follows:

1. I am a defendant in the above-captioned lawsuit. I am also the owner and operator of the Research Vessel ("R/V") QUEST, which is also a defendant in the case. I am not represented by counsel. I represent myself.

2. I located the wreck of the Lightship NANTUCKET (LV-117), a light vessel ("LV") of the United States that sank roughly 50 miles south of the Island of Nantucket and 200 miles east of New York City in 1934.

3. In the spring of 1999, I requested permission from the U.S. Coast Guard to remove the ship's bell from the Lightship NANTUCKET (LV 117) for presentation to the Coast Guard Museum at the Coast Guard Academy in New London, Connecticut. I

indicated in that request that I would wait for permission from the Coast Guard before

going forward with that project.

4. In the summer of 1999, I received a letter from U.S. Coast Guard denying my

request. Out of concern that important historical artifacts would be damaged by bottom-

dragging fishing nets and with the intent of honoring those who served aboard the Lightship

NANTUCKET (LV-117), over the next several years, I removed the ship's bell and several

other artifacts from the wreck: the ship's main lantern, the engine order telegraph, the

compass binnacle, the hub of the ship's helm, five port holes, and a clock cover. The bell

was the last item removed from the Lightship NANTUCKET (LV-117) in August 2004.

5. In late 2004, a Special Agent of the Coast Guard Investigative Service ("CGIS"),

contacted me, identified himself as a CGIS Special Agent, and advised me that the Coast

Guard was investigating the unauthorized removal of artifacts from the Lightship

NANTUCKET (LV-117). The CGIS Agent told me that I was not in custody, and I

consented to a voluntary interview, during which I explained how I located and identified the

wreck of the Lightship NANTUCKET (LV-117). I told the CGIS Agent that I had received

the Coast Guard's denial of my request prior to removing the bell and other articles from

the Lightship NANTUCKET (LV-117). I truly thought I would be helping the Coast Guard

to recover its property and honor its proud history by continuing to dive on the wreck and it

was always my intention to place the items on public display. I showed the CGIS Agent the

bell and compass binnacle and informed him that I also had several port holes and the clock

case in my possession. I told the CGIS Agent that two other members of the Boston Sea

2

Rovers, Tom Packer and Steve Gatto, had the hub of the ship's helm, the main lantern

assembly, and the engine order telegraph in New Jersey.

6. The same day that I met with the CGIS Agent, I called the other divers involved in

the Lightship NANTUCKET (LV-117) operations and we agreed that all the items would be

returned to the U.S. Coast Guard promptly and without any conditions. That is, we did not

claim any ownership of the NANTUCKET (LV-117) artifacts and we did not seek any award

of salvage, even though the cost and risk of recovering those items was considerable. We

just wanted to return the items to the Coast Guard as the rightful owner without any

personal gain. I relayed this information to the CGIS Agent the same day as our meeting, or

the following day.

7. Not long after meeting with the CGIS Agent and agreeing to unconditionally

return all of the Federal property removed from the wreck of the Lightship NANTUCKET

(LV-117), I retained counsel. I did this with the sole objective of ensuring that I would not

be prosecuted for theft of Federal property. I presumed that my lawyer was working that

out, but I did not receive any feedback on any discussions that he may have had with the

Coast Guard and I did not receive any copies of correspondence that he may have

exchanged with the Coast Guard on my behalf.

8. Only after I received a copy of the United States' Motion and Memorandum and

Complaint in the above-captioned matter did I realize that my lawyer had been pushing for a

claim of ownership or a claim of a "liberal salvage award" and raising other conditions with

respect to return of the NANTUCKET (LV-117) artifacts. At that time I terminated my lawyer's representation and chose to represent myself and my ship on my own.

9. On March 11, 2005, I voluntarily and unconditionally surrendered the NANTUCKET (LV-117) artifacts that were within my possession to a CGIS Agent in Boston, Massachusetts: the ship's bell and compass binnacle, four port holes, and a clock case. I did not make and do not make any claim to ownership of these articles and I did not make and do not make any claim to a salvage award for returning them to the Coast Guard.

10. On March 15, 2005, I spoke with Matthew Glomb, attorney for the United States Department of Justice, the Government's trial lawyer assigned to the above-captioned case. I confirmed that the return of the items in paragraph 9, above, was in fact unconditional. I also told him that I had instructed my colleagues to similarly return the remaining items (a port hole, the main light assembly, the hub of the ship's helm, the engine order telegraph, and a steel plate) to the nearest Coast Guard unit as soon as possible and also without any conditions attached. Defendant Morton was to return the remaining port hole and Defendants Gatto and Packer were to return the other items. Based on telephone conversations, it is my understanding that they have unconditionally returned those items.

11. While speaking with Mr. Glomb, I confirmed – and hereby swear, under penalty of perjury – that the items described above in paragraphs 9 and 10 were, to my knowledge, the only items removed from the wreck of the Lightship NANTUCKET (LV-117). Since I was involved in each diving operation and my vessel was used in each diving operation, I am entirely confident that this is true, that no other NANTUCKET (LV-117) artifacts or any

4

other items in the vicinity of or in any way associated with the NANTUCKET (LV-117) were removed from the wreck site. Thus, all the items have been unconditionally returned to the Coast Guard.

12. In retrospect, I regret having done what I did without first securing the Coast Guard's permission. I am a former Coast Guardsman myself and had and have only the best intentions toward the Coast Guard. In the future, I will neither dive on or remove articles from the wreck of the NANTUCKET (LV-117), nor assist others in such ventures, unless first securing the express consent of the U.S. Coast Guard. To that end, I will neither loan or lease the R/V QUEST in support of dive operations on or near the wreck of the Lightship NANTUCKET (LV-117), nor will I publish or share the geographical coordinates of that wreck with others without first securing the Coast Guard's express permission.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this _1,_ day of _APRIL_ , 2005 in Fairhaven, MA.


ERIK J. TAKAKJIAN
On behalf of myself, and
On behalf of R/V QUEST

5

# ATTACHMENT   2

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10397-RWZ

USA v. Takakjian et al
Assigned to: Judge Rya W. Zobel
Cause: 28:1345 USA Plaintiff

Date Filed: 03/01/2005
Jury Demand: None
Nature of Suit: 120 Contract: Marine
Jurisdiction: U.S. Government Plaintiff

| Date Filed | # | Docket Text |
|---|---|---|
| 03/01/2005 | 1 | COMPLAINT against Tom Murray, Dave Morton, Steve Scheuer, Boston Sea Rovers, Research Vessel (RV) Quest, Eric J. Takakjian, Steve Gatto, Tom Packer Filing fee: $ 250, receipt number NA, filed by USA. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Civil Cover Sheet and Category Sheet) (Johnson, Jay) (Entered: 03/08/2005) |
| 03/01/2005 | | Summons Issued as to Tom Murray, Dave Morton, Steve Scheuer, Boston Sea Rovers, Eric J. Takakjian, Steve Gatto, Tom Packer. (Johnson, Jay) (Entered: 03/08/2005) |
| 03/01/2005 | | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Alexander. (Johnson, Jay) (Entered: 03/08/2005) |
| 03/01/2005 | 2 | MOTION for Preliminary Injunction and MOTION for Temporary Restraining Order by USA.(Johnson, Jay) (Entered: 03/08/2005) |
| 03/01/2005 | 3 | MEMORANDUM in Support re 2 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by USA. (Johnson, Jay) (Entered: 03/08/2005) |
| 03/01/2005 | 4 | DECLARATION of CDR Steven M. Stancliff, USCG by USA. (Johnson, Jay) (Entered: 03/08/2005) |
| 03/04/2005 | 5 | Judge Rya W. Zobel : ORDER entered. ORDER TO SHOW CAUSE Show Cause Hearing set for 3/11/2005 09:30 AM in Courtroom 12 before Judge Rya W. Zobel.(Johnson, Jay) (Entered: 03/08/2005) |
| 03/10/2005 | 8 | SUMMONS Returned Executed Steve Scheuer served on 3/10/2005, answer due 3/30/2005. (Johnson, Jay) (Entered: 03/15/2005) |
| 03/11/2005 | 6 | Judge Rya W. Zobel : Order Stipulation/ORDER entered. re 2 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by USA.(Urso, Lisa) (Entered: 03/14/2005) |
| 03/11/2005 | 7 | SUMMONS Returned Executed Dave Morton served on 3/9/2005, answer due 3/29/2005. (Johnson, Jay) (Entered: 03/15/2005) |
| 03/11/2005 | 9 | SUMMONS Returned Executed Boston Sea Rovers served on 3/9/2005, answer due 3/29/2005. (Johnson, Jay) (Entered: 03/15/2005) |

| 03/18/2005 | 10 | Judge Rya W. Zobel : CONSENT ORDER entered. (Johnson, Jay) (Entered: 03/22/2005) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/02/2005 11:20:53 | | |
| **PACER Login:** dj0009 | **Client Code:** N | |
| **Description:** Docket Report | **Search Criteria:** 1:05-cv-10397-RWZ | |
| **Billable Pages:** 1 | **Cost:** 0.08 | |